# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE PATRICK HANEY, | CASE NO. 1:04-cv-05935-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS NELSON AND SALDANA BE GRANTED AND DEFENDANTS' OBJECTIONS AND MOTION FOR RECONSIDERATION BE DISREGARDED AS MOOT |
| v. | |
| SALDANA, et al., | |
| Defendants. | |
| | (Docs. 57, 65) |
| | OBJECTIONS DUE WITHIN THIRTY DAYS |
| _____/ | |

## FINDINGS and RECOMMENDATIONS

### I.    Procedural History

Plaintiff Bruce Patrick Haney (hereinafter "Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on July 6, 2004.  (Doc. 1.)  This action now proceeds under the Third Amended Complaint, filed on February 26, 2007, on Plaintiff's claims for deliberate indifference to serious medical needs under the Eighth Amendment against Defendants Correctional Officer R. Saldana and Correctional Sergeant A. L. Nelson (hereinafter "Defendants").  (Doc. 26.)  On May 20, 2010, Defendants filed a motion for summary judgment as to Plaintiff's claims.  (Doc. 57.)  Plaintiff filed his opposition to the present motion on June

15, 2010.  (Doc. 61.)[1]  Defendants filed their reply on June 18, 2010.  (Doc. 62.)  The motion is deemed submitted.

For the reasons discussed herein below, Defendants are entitled to summary judgment on Plaintiff's claim(s) such that their motion should be granted in its entirety.

## II.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id*.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on January 7, 2009.  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact. *Id.*

## III.  Plaintiff's Allegations and Claims Under the Eighth Amendment[2]

Plaintiff is currently a state prisoner at California State Prison in Corcoran, California. Plaintiff was formerly imprisoned at Pleasant Valley State Prison (hereinafter "PVSP") in Coalinga, California, where the acts he complains of occurred.

In the Third Amended Complaint (Doc. 26), Plaintiff alleges that, upon his arrival at PVSP, on August 8, 2003, he was placed in administrative segregation/orientation.  On August 11, 2003, Plaintiff asked the sick call nurse to see a dentist as he had a bad toothache.  The nurse told Plaintiff to contact the unit officer at breakfast if Plaintiff was in need of emergency dental treatment.  Plaintiff contacted Defendant Saldana that morning, requesting to go to medical

---

[2] This is a rendition of the factual allegations upon which Plaintiff's claims against Defendants were found cognizable which are delineated herein for overview purposes only.  Undisputed and disputed material facts are discussed in the immediately following section.

1  services.  Defendant Saldana asked Plaintiff why he wanted to see the dentist to which Plaintiff

2  responded by telling her of his toothache.  Defendant Saldana stated that she would call medical

3  services to see if they wanted to see him, but she never returned.  Defendant Saldana took four

4  other inmates to medical services that morning.

5      Plaintiff filed a grievance with the orientation housing unit sergeant regarding Defendant

6  Saldana's refusal to take him to a dentist.  Plaintiff talked to Defendant Sergeant Nelson the next

7  day regarding the grievance, which Defendant Nelson said he had not received.  Plaintiff told

8  Defendant Nelson of his urgent need to see a dentist because of the severe pain Plaintiff was

9  suffering at the time.  Defendant Nelson left Plaintiff and never returned.  Plaintiff filed a second

10  grievance, which was never processed.  Plaintiff was held in orientation for three weeks without

11  dental treatment.  Because of the pain from his tooth, Plaintiff could not eat or drink water.

12  Plaintiff would wake up in pain every morning.  Upon Plaintiff's release from orientation into the

13  main-line, Plaintiff went to see a dentist.  X-rays revealed a hole in Plaintiff's second molar.  The

14  dentist informed Plaintiff that the tooth would need to be removed and that the tooth might have

15  been saved if he had seen Plaintiff sooner.

16  **IV.   Undisputed and Disputed Facts[3]**

17      At all times relevant to this action, Plaintiff was an inmate in the custody of the State

18  of California.  On August 8, 2003, Plaintiff transferred from North Kern State Prison (hereinafter

19  "NKSP") to PVSP.  (Doc. 59, Def. Stmt of Undisp. Fact ("UF"), No. 1.)  Plaintiff is no longer

20  incarcerated at PVSP.  (*Id.* at UF No. 2.)  At all times relevant to this action, Defendant Saldana

21  was employed as a Correctional Floor Officer at PVSP.  (*Id.* at UF No. 3.)  At all times relevant

22

23          [3] Plaintiff neither admitted or denied the facts set forth by Defendant as undisputed.  Local Rule 260(b).
      While his opposition contains a section entitled "Statement of Facts" (Doc. 61, Plntf. Opp., 2:17-5:2), it is deficient

24  since it only makes reference to the supporting evidence for one fact in over two pages of writing and was not
      verified.  (*Id.* at 3:9-12.)  Further, while Plaintiff submitted a document identified as his declaration in opposition to

25  the current motion, it is also deficient as it was not signed under penalty of perjury.  (*Id.* at pp. 51-53.)  Therefore,
      the Court compiled the statement of undisputed facts from Defendant's statement of undisputed facts and Plaintiff's

26  verified Complaint, but not from his unverified opposition.  *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir.
      1998).  Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendant's statement

27  of undisputed facts, the Court accepts Defendant's version of the facts except where contradicted by Plaintiff's
      verified complaint.

28

1    to this action, Defendant Nelson was employed as a Correctional Sergeant at PVSP.  (*Id.* at UF

2    No. 4.)

3            Prior to his arrival at PVSP, on July 29, 2003, Plaintiff was examined and treated by Dr.

4    Wilford at NKSP in regards to his second molar (#2 tooth).  (*Id.* at UF No. 5.)  Plaintiff's dental

5    records indicate that his #2 tooth had deep decay, and was "non-restorable" at that time.  (*Id.* at

6    UF No. 6.)  The only treatment provided by CDCR for a tooth designated as "non-restorable" is

7    the extraction (removal) of that tooth.  (*Id.* at UF No. 7.)  An inmate may elect to refuse the

8    extraction for a period of time, but a "non-restorable" tooth cannot be saved and will continue to

9    deteriorate until immediate extraction becomes necessary. (*Id.* at UF No. 8.)  Plaintiff's dental

10   records indicate that he could have had the tooth removed at NKSP, but refused the extraction.

11   (*Id.* at UF No. 9; Doc. 26, Compl., Ex C, p. 25.)

12           Upon his transfer to PVSP on August 8, 2003, Plaintiff was housed in the administrative

13   segregation/orientation unit (hereinafter "Ad-Seg").  (*Id.* at UF No. 10.)  While he was housed in

14   Ad-Seg, Plaintiff could have requested and received pain management medication from the nurse

15   who passed through his housing unit each morning.  (*Id.* at UF No. 11.)  In the Third Amended

16   Complaint, Plaintiff states that, on August 11, 2003, he "made a request to the Ad-

17   Seg/Orientation sick call nurse to see a dentist complaining of a bad toothache" and was "told

18   that on Thursday morning [he] was to tell the unit officer at breakfast that [he] was in need of

19   emergency dental treatment and wished to go with the medical line that morning to the medical

20   services office for emergency dental treatment."  (Doc. 26, 3rd Amd. Comp., § IV, p. 3.)

21   Inmates housed in Ad-Seg must be escorted to the medical/dental unit.  (Doc. 59, at UF No. 12.)

22   Correctional staff did not have authority to: (1) escort inmates to the dental unit without

23   pre-authorization from medical or dental staff; (2) schedule dental appointments for inmates; or

24   (3) provide dental diagnoses or treatment.  (*Id.* at UF No. 13.)

25           As a Correctional Sergeant, Defendant Nelson did not have authority to process sick call

26   slips, schedule medical/dental appointments, provide diagnoses or treatment for inmates, or

27

28

transport them to the medical unit without pre-authorization. (*Id.* at UF No. 14.) As a Floor

Officer, Defendant Saldana did not have authority to process sick call slips, schedule

medical/dental appointments or transport inmates to the medical unit without pre-authorization.

(*Id.* at UF No. 15.) Custody staff members have no authority over medical/dental staff. (*Id.* at

UF No. 16.) If an inmate brings a health concern to the attention of custody staff, that officer

apprises medical/dental staff of the situation, and defers to the directions received from medical

staff. (*Id.* at UF No. 17.) Medical/dental staff determines whether treatment is necessary. (*Id.* at

UF No. 18.) Medical/dental staff inform custody staff which inmates they want to see and when.

(*Id.* at UF No. 19.) Medical/dental staff schedule all appointments and direct custody staff to

provide escorts. (*Id.* at UF No. 20.) Plaintiff did not have a pre-scheduled dental appointment.

(*Id.* at UF No. 21.)

On Thursday, August 14, 2003, Plaintiff told Defendant Saldana that he had a toothache

and wanted to see the dentist immediately. (*Id.* at UF No. 22; Doc. 26, 3rd Amd. Comp., § IV.)

Defendant Saldana notified dental staff of Plaintiff's complaint that same day and was directed to

ask Plaintiff some medical questions. (*Id.* at UF No. 23.) In the Third Amended Complaint,

Plaintiff alleges that "even though Officer R. Saldana was aware that [he] was in pain, she

ignored this fact." (Doc. 26, 3rd Amd. Comp., 4:16-17.) Yet Defendants submit evidence

(including Plaintiff's deposition testimony) to show that Defendant Saldana asked Plaintiff

questions about his toothache, as directed, then reported Plaintiff's answers to dental staff. (*Id.* at

UF No. 24; Doc. 26, 3rd Amd. Comp., § IV.) Dental staff informed Defendant Saldana that the

clinic would not see Plaintiff at that time. (*Id.* at UF No. 25.) Medical/dental staff never

informed Defendant Saldana that Plaintiff required an escort for treatment. (*Id.* at UF No. 26.)

On August 16, 2003, Plaintiff informed Defendant Nelson that he had a toothache. (*Id.* at

UF No. 27; Doc. 26, Compl. at 5:19-24, Ex. B, pg. 21.) Defendant Nelson informed

medical/dental staff of Plaintiff's toothache so that they could schedule him for an appointment if

one was necessary. (*Id.* at UF No. 28.) Medical/dental staff never informed Defendant Nelson

1    that Plaintiff required an escort for treatment. (*Id.* at UF No. 29.)  In the Third Amended

2    Complaint, Plaintiff alleges that he asked Defendant Nelson if he had received Plaintiff's

3    complaint form 602, and that when Defendant Nelson responded in the negative, Plaintiff

4    advised him of Plaintiff's urgent need to see a dentist and explaining the severe pain that Plaintiff

5    was suffering at the time. (Doc. 26, 3rd Amd. Comp., 5:19-24.)  Plaintiff further alleges that

6    Defendant Nelson left his cell door, never returned, and that Plaintiff was never escorted to

7    medical services. (*Id.* at 5:25-26.)

8            On September 9, 2003, after Plaintiff was released from orientation, he was examined and

9    treated by Dr. Alexander regarding his #2 tooth. (*Id.* at UF No. 30; Doc. 26, 3rd Amd. Comp.,

10   6:24-26.)  Plaintiff's dental records indicate that the #2 tooth had irreversible pulpitis, an

11   infection of the nerve inside the tooth which kills the nerve, necessitating extraction. (*Id.* at UF

12   No. 31.)  Plaintiff agreed to have the tooth extracted. (*Id.* at UF No. 32.)  On September 10,

13   2003, the dental records indicate Plaintiff's #2 tooth was extracted and Plaintiff was prescribed

14   Motrin. (*Id.* at UF No. 33; Doc. 26, 3rd Amd. Comp., Ex. C, p. 26.)  Because Plaintiff's #2 tooth

15   already had deep decay and was determined to be non-restorable as of July 29, 2003, no

16   treatment Plaintiff could have received, from July 29, 2003 to September 9, 2003, could have

17   saved the tooth. (*Id.* at UF No. 34.)  In the Third Amended Complaint, Plaintiff alleges that Dr.

18   Alexander told him that if Plaintiff had "come to him sooner, the tooth may have been able to be

19   saved, but now it would have to come out." (Doc. 26, 3rd Amd. Comp., Ex. C, 6:24-7:3.)

20   **V.      Eighth Amendment – Deliberate Indifference to Serious Medical Need**

21           Plaintiff claims that Defendants acted with deliberate indifference when they failed to

22   escort him for emergency dental treatment and that the resulting three-week delay in receipt of

23   dental treatment caused the loss of his tooth and unnecessary pain. (Doc. 26, Compl.; Doc. 26,

24   Screen Ord.)

25           Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the

26   prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

27

28

                                                    7

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Such a claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991).  A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id.* at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. *Farmer*, 511 U.S. at 834.  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (*quoting Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (*quoting Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy* 801 F.2d 1080, 1111 (9th Cir. 1986) *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (*citing Estelle*, 429 U.S. at 104-05); *see also Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) *McGuckin*

974 F.2d at 1059.  Delay of, or interference with, medical treatment can also amount to deliberate indifference.  *See Jett*, 439 F.3d at 1096; *Clement*, 298 F.3d at 905; *Hallett*, 296 F.3d at 744; *Lopez*, 203 F.3d at 1131; *Jackson*, 90 F.3d at 332; *McGuckin* 974 F.2d at 1059; *Hutchinson v. Untied States,* 838 F.2d 390, 394 (9th Cir. 1988).

    **A.**    **Defendants' Have Met Their Burden**

          **1.**    **Defendant Saldana**

Defendants have submitted evidence to contradict Plaintiff's claim that Defendant Saldana intentionally delayed his medical treatment, when she failed to escort him.  (Doc. 59, UF No. 35.)  Defendants' evidence shows that, as a correctional officer, Defendant Saldana did not have authority to: (1) provide treatment; (2) determine the course of treatment provided; (3) schedule an appointment for Plaintiff; or (3) escort him for treatment without authorization from dental staff.  (*Id.* at UF Nos. 13, 15.)  Defendants' evidence also shows that Defendant Saldana immediately brought Plaintiff's complaint to the attention of dental staff in an effort to secure him medical treatment. (*Id.* at UF Nos. 23, 24.)  Defendant Saldana, was required to defer to dental staff's instructions (*Id.* at UF Nos. 16, 17), and dental staff ultimately determined Plaintiff would not be seen at that time.  (*Id.* at UF Nos. 25, 26.)  Defendant Saldana had no authority over dental staff, and could not require them to treat Plaintiff.  (*Id.* at UF Nos. 16, 18.)

Since Defendant Saldana deferred to the decisions of trained dental staff on matters involving Plaintiff's dental care, she cannot reasonably be found to be the "moving force" behind the alleged violation, or to have caused any injury resulting from the delay in care.  *See Monell*, 436 U.S. at 694.  Defendant's evidence shows that Defendant Saldana responded reasonably to the risk of which she was aware and deferred to the directives of trained dental staff.

Accordingly, Defendant Saldana has met her burden of showing that she did not deny, delay, or intentionally interfere with Plaintiff's medical treatment in deliberate indifference to his serious medical need.

/ / /

1

### 2. <u>Defendant Nelson</u>

2      Defendants have submitted evidence to show that Defendant Nelson did not intentionally

3 delay Plaintiff's medical treatment when he did not immediately escort Plaintiff for dental care

4 upon becoming aware of Plaintiff's toothache.  (Doc. 59, UF No. 35.)  Like Defendant Saldana,

5 Defendant Nelson did not have authority to: (1) provide treatment, (2) determine the course of

6 treatment provided; (3) schedule an appointment for Plaintiff; or (3) escort him for treatment

7 without authorization from dental staff. (*Id.* at UF Nos. 13, 14.)  Defendant Nelson immediately

8 relayed Plaintiff's complaint regarding his toothache to medical/dental staff so that they could

9 schedule an appointment for Plaintiff if one was necessary. (*Id.* at UF No. 28.)  Defendant Nelson

10 was never informed that Plaintiff required an escort for treatment.  (*Id.* at UF No. 29.)

11      Defendant Nelson was required to defer to medical/dental staff's instructions regarding

12 inmate appointments and treatment, and did so. (*Id.* at UF Nos. 16, 17.)  Defendant Nelson,

13 therefore, cannot reasonably be found to be the "moving force" behind the alleged violation, or to

14 have caused any injury resulting from the delay in care.  *See Monell*, 436 U.S. at 694.

15      Defendants' evidence shows that Defendant Nelson responded reasonably to the risk of

16 which he was aware, and deferred to the directives of trained dental staff such that Defendant

17 Nelson did not deny, delay, or intentionally interfere with Plaintiff's medical treatment in

18 deliberate indifference to Plaintiff's serious medical need.

19

### 3. <u>Causation of Substantial Harm</u>

20      Where the prisoner is alleging that delay of medical treatment evinces deliberate

21 indifference, the prisoner must show that the delay led to further injury.  *See Hallett*, 296 F.3d at

22 745-46; *McGuckin* 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

23 404, 407 (9th Cir.1985) (*per curiam*).  Mere delay which did not cause harm is insufficient to

24 state a claim of deliberate medical indifference, and Plaintiff will "have no claim for deliberate

25 medical indifference unless the denial was harmful." *Id., citing Estelle v. Gamble*, 429 U.S. 97,

26 106 (1976).  Only delays that cause substantial harm violate the Eighth Amendment. *Berry v.*

27

28

1   *Bunnell* 39 F.3d 1056, 1057 (9th Cir. 1994) *citing Wood v. Housewright*, 900 F.2d 1332, 1335

2   (9th Cir.1990).  Substantial harm is not present when the inmate's condition does not require

3   emergency attention.  *Wood v. Housewright* 900 F.2d 1332, 1335 (9th Cir. 1990) *citing*

4   *Broughton v. Cutter Laboratories* 622 F.2d 458, 460 (9th Cir. 1980).

5          The evidence submitted by Defendants shows that, on July 29, 2003, before his transfer to

6   PVSP, Plaintiff's tooth was determined to be "non-restorable" such that their actions did not

7   cause the loss of Plaintiff's tooth.  (Doc. 59, UF Nos. 5, 6.)  The tooth could not have been saved.

8   (*Id.* at UF Nos. 7, 8, 34.)  Thus, Defendants have met their burden of proving that nothing they

9   did, or failed to do, caused the loss of Plaintiff's tooth.

10         Defendants' evidence also shows that they are not liable for any pain Plaintiff

11  experienced regarding his toothache for the time they were involved in his custody and even until

12  the offending tooth was removed as they reported Plaintiff's concerns regarding his toothache to

13  dental staff (*id.* at UF Nos. 23-25, 28-29) and Plaintiff could have received pain management

14  medication directly from the nurse who passed through his housing unit each morning (*id.* at UF

15  No. 11).

16         Defendants have met their initial burden of informing the Court of the basis for their

17  motion and identifying admissible evidence to demonstrate the absence of a genuine issue of

18  material fact as to Plaintiff's claim that Defendants Saldana and Nelson were deliberately

19  indifferent to his serious medical needs.  The burden therefore shifts to Plaintiff to establish that

20  a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v.*

21  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As stated above, in attempting to establish the

22  existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his

23  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

24  admissible discovery material, in support of his contention that the dispute exists.  Fed. R. Civ. P.

25  56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank*, 391 U.S. at 289; *Strong v. France*, 474

26  F.2d 747, 749 (9th Cir. 1973).

27

28

1
2

## B.     Plaintiff Did Not Meet His Burden

### 1.     Defendant Saldana

3   Plaintiff did not submit any evidence to show that, once made aware, Defendant Saldana
4   did not immediately inform medical/dental staff of his complaints and/or had any ability to make
5   medical/dental staff see Plaintiff.  The closest Plaintiff came to addressing this issue is when he
6   alleged that: (1) on August 11, 2003, he "made a request to the Ad-Seg/Orientation sick call
7   nurse to see a dentist complaining of a bad toothache" and was "told that on Thursday morning
8   [he] was to tell the unit officer at breakfast that [he] was in need of emergency dental treatment
9   and wished to go with the medical line that morning to the medical services office for emergency
10  dental treatment" (Doc. 26, 3rd Amd. Comp., § IV, p. 3); (2) on Thursday, August 14, 2003,
11  Plaintiff told Defendant Saldana that he had a toothache and wanted to see the dentist
12  immediately (*id.*); (3) Defendant Saldana questioned Plaintiff as to why he wanted to see the
13  dentist, what was wrong with his tooth, which tooth, indicated that she was going to have to call
14  medical/dental staff to see if they wanted to see Plaintiff, left, and then did not return (*id.* at 4:1-
15  5); and (4) "even though Officer R. Saldana was aware that [Plaintiff] was in pain, she ignored
16  this fact" (*id.* at 4:16-17.)

17  While it shows that Defendant Saldana did not obtain the relief Plaintiff was hoping for,
18  none of this evidence shows that Defendant Saldana did not immediately take Plaintiff's
19  complaints to medical/dental staff, nor does it show that Defendant Saldana had any control over
20  whether the medical/dental department would agree to see Plaintiff.

21
### 2.     Defendant Nelson

22  Plaintiff also did not submit any evidence to show that, once made aware, Defendant
23  Nelson did not immediately inform medical/dental staff of his complaints and/or had any ability
24  to make medical/dental staff see Plaintiff.  The closest Plaintiff came to addressing this issue is
25  when he alleged that: (1) on August 16, 2003, Plaintiff informed Defendant Nelson that he had a
26  toothache (Doc. 26, 3rd Amd. Comp. at 5:19-24, Ex. B, pg. 21); (2) he asked Defendant Nelson

27
28

if he had received Plaintiff's complaint form 602 and when Defendant Nelson responded in the negative, Plaintiff advised him of Plaintiff's urgent need to see a dentist and explaining the severe pain that Plaintiff was suffering at the time (*Id.* at 5:19-24); and that Defendant Nelson left his cell door, never returned, and that Plaintiff was never escorted to medical services (*Id.* at 5:25-26).

Here again, while Plaintiff's evidence shows that Defendant Nelson did not obtain the relief Plaintiff was hoping for, none of this evidence shows that Defendant Nelson did not immediately take Plaintiff's complaints to medical/dental staff, nor does it show that Defendant Nelson had any control over whether the medical/dental department would agree to see Plaintiff.

Further, Defendant Nelson, as a supervisor is generally not liable under section 1983 for the actions of his subordinates under a theory of *respondeat superior*; therefore, the causal link between him and Plaintiff's claimed constitutional violation must be specific.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  Plaintiff failed to submit evidence to support a claim that Defendant Nelson either: personally participated in a deprivation of Plaintiff's constitutional rights; knew of the violation(s) and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees/subordinates under a theory of *respondeat superior*.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).  "In a §1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer."  *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct.  *Id.*  Accordingly, Defendant Nelson is not liable for the acts or inactions of his subordinates.

1

### 3.   Causation of Injury

2      Plaintiff did not submit any admissible evidence to show that his tooth could have been

3   saved if he had seen Dr. Alexander at any time during his stay in Ad-Seg.

4      The only submissions by Plaintiff on this issue are again found in his pleading wherein he

5   alleges that when he was released to the main-line, he went to see the main-line dentist about his

6   tooth and x-rays revealed a hole in his second molar such that the tooth required extraction and

7   the main-line dentist told Plaintiff that the tooth "may have been able to be saved" if Plaintiff had

8   come in sooner, but "now it had to come out." (Doc. 26, 3rd Amd. Comp., 6:24-7:3 and Ex. C,

9   p. 26.) On September 10, 2003, Plaintiff's tooth was extracted and Plaintiff was prescribed

10  Motrin. (*Id.* at Ex. C, p. 26.)

11     Plaintiff does not meet his burden of showing that, but for the delay in treatment he

12  received allegedly by the actions of Defendants Saldana and Nelson, his tooth would have been

13  able to be saved. First off, Plaintiff has not made any submission to show that his tooth could

14  have been saved upon his arrival at PVSP, and any arguments to that end in his opposition are

15  not persuasive as Plaintiff does not qualify as an expert under Rule 702 of the Federal Rules of

16  Evidence. Further, his allegation that the main-line dentist told him that the tooth "may have

17  been able to be saved" if Plaintiff had come in sooner, but "now it had to come out" (*id.*) does not

18  meet the preponderance of evidence standard[4] – "may have been able to be saved" simply does

19  not make it more likely than not that the tooth would have been able to be saved during the time

20  frame in question in this action.

21     Thus, Plaintiff does not establish a triable issue of fact as he does not present any

22  admissible evidence to contradict Defendants' evidence that, because Plaintiff's #2 tooth already

23  had deep decay and was determined to be non-restorable as of July 29, 2003, no treatment

24  Plaintiff could have received, from July 29, 2003 to September 9, 2003, could have saved the

25  tooth. (*Id.* at UF No. 34.)

26  _____

27     [4] See 9th Circuit Model Civil Jury Instruction 1.3 (2007).

28

1    Further, Plaintiff does not submit any evidence to in any way suggest that he was not able

2    to obtain pain medication from his arrival at PVSP through the date that his tooth was extracted.

3    Accordingly, Plaintiff has not established that a genuine issue as to any material fact

4    exists such that Defendants' motion for summary judgment should be granted.  Since Defendants

5    are entitled to summary judgment on the merits of Plaintiff's claims against them, the issue of

6    whether Defendant is entitled qualified immunity need not be reached.

7    Further, Plaintiff did not file a request for postponement of this motion under Rule 56(f),

8    or in any way argue/show[5] that facts necessary to oppose this motion for summary judgment were

9    not available to him when he was required to file his opposition, despite having been provided

10   information on such requirements.[6]   Accordingly, in light of the finding that Defendants' motion

11   for summary judgment should be granted, their motion for reconsideration, filed July 26, 2010, is

12   properly disregarded as moot.

13   **VI.    Conclusion and Recommendation**

14   Accordingly, this Court finds that the motion for summary judgment filed by Defendants

15   Saldana and Nelson should be granted in its entirety as they are entitled to summary judgment on

16   Plaintiff's claims for violations of his rights under the Eighth Amendment.

17   As set forth herein, the Court HEREBY RECOMMENDS:

18   (1)      Defendants Saldana and Nelson are entitled to summary judgment on Plaintiff's

19            claims under the Eighth Amendment such that their motion for summary

20            judgment, filed on May 20, 2010 (Doc. 57), should be GRANTED;

21   (2)      that the Clerk of the Court be directed to enter judgment for the Defendants

22

23   [5] Plaintiff did not make any such argument and/or showing in either his opposition to this present motion, or
in his opposition (Doc. 70) to the objections and request for reconsideration and clarification which Defendants filed
24   (Doc. 68) to this Court's order granting Plaintiff's motions to compel (Doc. 67).  In Defendants' objection and
request for reconsideration, they specifically requested discovery be stayed pending a ruling on their motion for
25   summary judgment and raised the fact that Plaintiff did not seek an extension to filing his opposition to this motion
under Rule 56(f).  (Doc. 68, Def. Obj. & Req for Recon, 2:6-9, 10:5-8.)

26
27   [6] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by
the court in an order filed on January 7, 2009.  *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

28

1    Saldana and Nelson and against Plaintiff;

2    (3)    that in light of this finding, Defendants' Objection and Motion for

3    Reconsideration, filed on July 26, 2010 (Doc. 65) be disregarded as moot; and

4    (4)    that the Clerk of the Court be directed to close the case.

5    These Findings and Recommendations will be submitted to the United States District

6    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

7    **thirty (30) days** after being served with these Findings and Recommendations, the parties may

8    file written objections with the Court.  The document should be captioned "Objections to

9    Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

10   objections within the specified time may waive the right to appeal the District Court's order.

11   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

12

13   IT IS SO ORDERED.

14   **Dated:    January 18, 2011             /s/ Sandra M. Snyder**
                                      UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28